## IN THE OREGON TAX COURT

## GUIDO

*v.*

## DEPARTMENT OF REVENUE

(TC 2212)

Gordon G. Carlson, Roseburg, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered July 23, 1985.

**CARL N. BYERS, Judge.**

Plaintiff appeals defendant's determination of true cash value of plaintiff's real property as of January 1, 1982, and January 1, 1983. The subject property consists of three contiguous parcels of land totaling approximately 242 acres. One hundred thirty-nine acres are in farmland status and the parties agree that the value of the farmland was $68,740 on

January 1, 1982, and $59,410 on January 1, 1983. The remaining 103 acres are utilized in a gravel and topsoil extraction operation.

The plaintiff stated that "at one time the entire property was part of the riverbed, because what is now dry land is underlaid by several feet of gravel, with several feet of topsoil on top of that. This portion of the property outside the riverbed has been 'mined' for soil and aggregate for many years." (Plaintiff's Memorandum for Hearing at 2.)

Account No. 7533.01 (Tract 1) contains 13.43 acres with the South Umpqua River forming its north and west boundaries. Account No. 8775.01 (Tract 2) contains 56.44 acres and lies south of the above tract.

The easterly and northeasterly portion of these two parcels is a "bar" which is replenished every few years by floodwaters.

Approximately 33.6 acres of Account No. 8775.03 (Tract 3) has been mined for gravel. The remaining 138.82 acres is farmland, the value of which is undisputed. The plaintiff contends that the 33.6 acres is "mined out" and has no value for any purpose. Plaintiff alleges that this excavated acreage is "wasteland" within the meaning of ORS 215.203(2)(b)(E) and if it has any value at all, it should be assessed at farm use value. ORS 215.203 defines "farm use" as "the current employment of land for the primary purpose of obtaining a profit." It further defines employment of land to include "[w]asteland, in an exclusive farm use zone, dry or covered with water, lying in or adjacent to and in common ownership with a farm use land and which is not currently being used for any economic farm use." (ORS 215.203(2)(b)(E)).

The defendant contends that this statutory definition does not apply to man-made wasteland and that the mined out land is not entitled to special farm use assessment. The court agrees that it would be a violation of legislative intent to allow an owner to destroy farmland through a non-farm use and receive favorable tax treatment regarding the wasteland created. This court has noted before that the farm use provisions reflect the legislative policy of stimulating the retention of currently productive farmland for agricultural

uses by providing a tax benefit to those who use the land for farm purposes only. *Beddoe v. Dept. of Rev.,* 8 OTR 185, 189 (1979).

The court finds that the acreage designated by the plaintiff as "mined out" does not qualify as "wasteland" pursuant to ORS 215.203(2)(b)(E). Therefore, it must be assessed at market value for its highest and best use.

The plaintiff offered an income approach to value the subject property, alleging that there are no comparable sales upon which to base a market approach. Plaintiff's appraiser used an annual production figure of 7,750 cubic yards at 62 cents per cubic yard for a total annual income of $4,805. This income was capitalized at 12 percent, the interest rate charged by the Federal Land Bank in Douglas County on January 1, 1982, and 1983, for a determination of value of $40,042. This value was split equally between Tract 1 and 2, for a conclusion of value for each of $20,021 for both years at issue.

Plaintiff's appraiser concluded that the portion of Tract 3 being contested (the "mined out" 33.36 acres) produced no income and has no potential for producing agricultural income; therefore, this acreage had a zero value.

The defendant's appraiser rejected the income approach but testified that using plaintiff's formula and applying it to production figures supplied by the plaintiff (Defendant's Exhibit C) resulted in a value far higher than that concluded by the plaintiff. A five-year average of plaintiff's own production figures at 62 cents per cubic yard, capitalized at 12 percent, resulted in a value of $427,750 on January 1, 1982, and $391,808 on January 1, 1983.

Defendant chose to rely upon the market data approach to value. The three comparable sales offered contained 44, 24 and 16 acres, respectively, compared to the subject property's 100-plus acres. The indicated price per acre on the extraction site of the comparable sales was $13,037, $2,428 and $5,575, respectively.

The defendant alleged that the subject property had a value of $6,000 per acre. Applying a 60 percent size adjustment, it was concluded that the acres in the quarry operation

had a value of $3,600 per acre, with the depleted areas valued at 50 percent, or $1,800 per acre.

The court questions the reliability of both approaches offered. Defendant's approach offered no estimate of the amount of gravel and topsoil contained within the three parcels sold. No comparison was offered to show the correlation between the material available on the subject property and the material on the properties offered as comparables. This deficiency is of particular concern because the mineable portion of the subject property appears to be a small portion of the total acres used in the gravel operation.

■ The plaintiff's income approach is totally flawed with its use of 7,750 cubic yards of production during the subject years when figures, supplied by the plaintiff, show a production of 124,092 cubic yards in 1982 and 30,576 cubic yards in 1983. Using these production figures and plaintiff's own formula results in a value supporting the defendant's conclusion of value pursuant to a market data approach. Therefore, the court affirms the defendant's conclusion of value and finds that the true cash value of the three contested parcels was:

| Account No. | 1-1-82 | 1-1-83 |
|---|---|---|
| 7533.01 | $ 48,528 | $ 48,528 |
| 8775.01 | 131,184 | 131,184 |
| 8775.03 | 93,096* | 84,096* |

* These values do not include farm special assessment land agreed by parties to have a value of $495.17 per acre on January 1, 1982, and $427.96 per acre on January 1, 1983.

Costs awarded defendant.